Oral argument not to exceed 15 minutes per side. Mr. Bruce LaPierre, supervising attorney to be argued by law student Mr. Benjamin Farley for the appellant. Good morning. Good morning. Hey please, the court. I'm Bruce LaPierre. Mr. Walsh and I represent the appellant Terrence Walter. And Benjamin Farley, a third year student at Washington University Law School, will be arguing the case. All right. Morning. Morning, your honors. May it please the court, I would request three minutes for rebuttal. All right. Mr. Walter's request for self-representation was wrongly denied by the trial judge as untimely. The Ohio Court of Appeals' decision upholding that denial was also wrongful, either because it rested on inadequate state law procedural grounds, or because it was an objectively unreasonable application of federal constitutional law. In either case, this court should grant Mr. Walter's habeas petition and hold that his Sixth Amendment right to self-representation has been violated. Now the Ohio Court of Appeals' decision is best understood as resting on state law procedural grounds. This is true for two reasons. First, the crux of the court's analysis rests primarily on two state court decisions, Halder and Cassano, and a Ninth Circuit decision, George, which the Court of Appeals interpreted as creating a procedural bar to Mr. Walter's request for self-representation. Second, the Court of Appeals' opinion does not adequately discuss federal constitutional law. It makes no reference to Martinez, nor does it reference the balancing test, which the Supreme Court in Martinez stated was the appropriate test to balance the criminal defendant's Sixth Amendment rights against the government's interest in an efficient trial. The reason for... Would you agree that the state court discussed federal constitutional law and federal constitutional law concepts in its opinion, which might cause us to believe that the federal constitutional issues were appropriately decided by the state court? So, Your Honor, let's look to the opinion. Yes, Your Honor, there is discussion of federal constitutional law. The Court of Appeals' opinion begins appropriately here on page 208 or page ID number 208. A discussion of the Sixth Amendment to the U.S. Constitution and citations to two Supreme Court decisions, Ferretta and McCanvey-Adams. That discussion of federal constitutional law is there to establish that the right to self-representation exists and that that right is rooted in the Sixth Amendment. But when we get to analyzing whether the request by Mr. Walter was timely, the discussion is entirely based on those two state court decisions and the Ninth Circuit decision. And the discussion there is entirely focused on the date on which the request was made, three days before trial, on the eve of trial, or four days before trial in those three cases. The very next sentence in that opinion, I think now we're on page 209, the Court of Appeals says Mr. Walter's request was on the fourth day of trial, which was incorrect. It was the third day of trial. But Mr. Walter's request was on the fourth day of trial. Therefore, the judge's decision for untimeliness was correct. This suggests that the courts interpreted a body of state case law as creating a procedural bar to someone like Mr. Walter at this point in the trial. But we also have a recent case of State v. Hardman, which was mentioned in Mr. Walter's reply brief. And in that case, we again see an Ohio Court of Appeals seeming to cite to a body of Ohio case law as establishing that a judge has complete discretion to decide the issue. I'm not following this argument because the state case is irrelevant because the Ohio Court of Appeals had to consider, I mean, it had to consider, as we do not, the appropriateness of the denial of the request under both state and federal law. For example, if federal law had permitted the denial, but state law had not, the Ohio Court of Appeals would have had to consider that. But we are concerned only with violations of federal constitutional law. But I don't see how you can really draw much importance from a state court's citation of state cases, which seems to me pretty unremarkable. I mean, clearly, the Court of Appeals put it in the context of the Sixth Amendment right and, you know, recognized that it was dealing with a federal right as well. I mean, I don't know. I mean, I guess my point would be, my question would be, big deal. So... Yes, Your Honor. The big deal is that as the Sixth Circuit panel in the recent case of Jones v. Bell recognized, the timeliness issue under Ferreira-Martinez can be decided either under federal constitutional law or under a state procedural rule. States are free to set procedural rules on the timeliness of... Or both. Or both, yes, Your Honor, or both. But here, again, Your Honor is correct that there are citations to federal constitutional law. But if we look at the opinion, those citations are there to establish that the right to self-representation exists and that right emanates from federal constitutional law. But then when we look at why it was untimely, the citations are to state law and entirely to the moments either before trial or on the eve of trial when it is untimely. And as the Sixth Circuit en banc said in Hill, the only hard and fast rule that the Supreme Court has set on timeliness in Ferreira was that several weeks before trial. A request must be heard or entertained. A Ferreira hearing must follow. But the Supreme Court, as a matter of federal constitutional law, has never said that there is a procedural bar. So an opinion that seems to suggest there is a procedural bar would be rooted in state procedural law. The upshot of that, Your Honor, hopefully to fully answer your question, is that this is now a decision that does not reach the merits of Mr. Walter's claim. It is a decision based on procedural law, and therefore AEDPA deference does not apply. And the Court— Do you get to make that argument in light of Harrington? Does Harrington create a problem for you in requiring what would appear to work as a presumption that there is a determination on the merits? We do not—no, Your Honor, we do not think so. Because even though there may be a presumption on the merits, looking at the opinion, there simply—we do not believe there is any evidence, or certainly anything beyond very weak evidence, that it was decided on the merits. The analysis itself on the timeliness is entirely on state law decisions. Wait a minute. Does Cassano talk about any state procedural rule? Because his opinion does not. Correct, Your Honor. Cassano discusses state cases and federal cases. But isn't Cassano concerned with the proposition that Mr. Walter's right to represent himself was not unlimited and dependent on the timing of his request? And it cited cases from the 9th, and Cassano itself relied on federal cases. And that is just as easily understood. I mean, I'm not sure it makes a difference, except for this point about whether the standard of review. But I don't see how you jump from that to saying this was a case based on a state procedural rule. I mean, the case itself doesn't really cite any state procedural rule. In terms of Cassano, Your Honor, again, you are correct that there is at least some citation to federal constitutional law. Well, there's citation at the beginning, and also the state case that is cited itself is talking about federal constitutional law and relying on federal law. We also need to look at how the Court of Appeals in Walter is interpreting those cases. And when we look at the explanations, and for two of those cases, the parentheticals, it is entirely about the date before trial as making the request untimely. Three days before trial is untimely. On the eve of trial is untimely. Let's assume we have to give Ed pedeference here. What do you have to say about that? If this Court believes that Ed pedeference has to be applied here, there is still an unreasonable application of federal constitutional law because neither the Court of Appeals nor the trial judge conducts anything like the Martinez balancing test, where the trial judge should balance the interest of the criminal defendant and the government's interest in an efficient trial. What we have instead is the trial judge on pages 10-12 to 10-18 continually... Where is the Supreme Court precedent that says the Court has to explicitly weigh on the record the interest of the defendant and the government? There is no Supreme Court case on that, Your Honor, and we do not come here today asking this Court to hold that there must be an express finding on the record. But there must be either on the record from the judge or evident on the face of the record itself that balancing occurs, that the interests of the criminal defendant are outweighed by the interests of an efficient trial. So, for example, Your Honor, we can certainly concede that a request for self-representation right before jury instructions come in and the jury is going to deliberate, the trial judge may not make any finding on the record there. The idea of disruption or delay is self-evident. Here, there is not. Mr. Walter is ready to proceed. There is standby counsel there who are ready to serve as standby counsel. There's simply no evidence of delay. The only delay that occurs is on pages 10-12 to 10-18, where we have the trial judge continually obstructing Mr. Walter's attempt to find out what are his constitutional rights here. The judge is saying you cannot represent yourself. The only issue here is whether or not you are being adequately represented rather than conducting the balancing test there to see if Mr. Walter's request was timely. Isn't it a correct statement to say that neither Ferretta nor Martinez requires the courts to overtly conduct any sort of balancing test? There's no explicit requirement to that effect in either case. Wouldn't you admit to that? If Your Honor's question is related to Judge Gibbons' question about an explicit finding on the record, yes, I would agree with you, Your Honor. You keep saying the court didn't do the appropriate balancing test. There's not an overt requirement that the court actually do that, although certainly the decision that switching the counsel situation on the third day of trial would have been unduly disruptive. That has to be a reasonable ruling on the court's behalf. Why wasn't that appropriate under the circumstances? I think two responses, Your Honor. First, we have no evidence either from the judge himself or on the record that there would have been undue delay or disruption. Returning to, I think, your original question about Ferretta and Martinez, even if there's not an explicit demand on trial judges, we do have Sixth Circuit cases. For example, the Sixth Circuit panel decision in U.S. v. Cunningham which discusses if the trial judge should balance the Sixth Amendment rights compared to the government's interests. On the record, we know that we were in the third or fourth day of trial. We know, at least the trial judge would have known, that it is inherently disruptive to have a pro se defendant, especially one charged with offenses that were as serious as those with which Mr. Walter was charged. I mean, it is just possible that this trial judge, perhaps likely, that this trial judge was not only concerned about disruption, but he was concerned about the harm to Mr. Walter, and I think that can be fairly inferred from the record, given the point in trial at which we were, just given the overall circumstances. Your Honor, we believe looking at the record, specifically from 1012 to 1018, where the trial judge is repeatedly telling Mr. Walter he cannot ask questions, he cannot represent himself, indicates that none of what Your Honor has just said was on the judge's mind. Well, at that point, I mean, you can't allow a defendant to either, if he's represented by counsel, he can't have a hybrid situation where he's both representing himself and represented by counsel. You've got to keep him within the boundaries, and that is indeed disruptive to have two different people questioning witnesses, one of whom is not a lawyer. Well, Your Honor, if we were to take that, I would worry that that would go too far, and then any request to represent yourself after the start of trial would automatically be denied, and this circuit's own precedent with Morrie v. Havland would suggest that cannot be true. All right, thank you very much. Thank you. You'll have your rebuttal time. I may have pleased the court. My name is Marianne Reese, and I represent the warden in this action. I'd like to, first of all, address the self-representation claim and two points the court brought out, and one is in the Hill case, Hill v. Curtin, this court said, quote, a trial judge may fairly infer on the day of trial, as the jurors are on their way to the courtroom, that a defendant's last-minute decision to represent himself would cause delay, whether or not the defendant asks for a continuance. So this court has already recognized the kind of questions that were asked here earlier. Secondly, with regard to the Harrington issue, Harrington says this, and this court said it in Jackson v. Smith, 745 F. 3rd, 206, at 2010. When the state court summarily rejects a claim or rejects a claim solely on the basis of state law, that decision is presumed to be an adjudication on the merits subject to AEDPA review when the federal claim was presented to the state court and in the absence of any indication or state law procedural principle to the contrary. So what happens? I think your opposing counsel draws a reasonable concern to the table. What happens when you have someone in the midst of a trial and it becomes apparent to that defendant that the attorney representing him or her is absolutely blowing the case, that there is a serious malfunction of justice because of that person's attorney? Is it your position that because it is in the midst of trial, that defendant never has the right or opportunity to step forward and say, I can't be represented by this person. I want to represent myself from now on. Your Honor, this is a habeas case, and we look to United States Supreme Court precedents. There has never been a United States Supreme Court precedent that says that when a request is made on the third or fourth day of trial or indeed anything other than, quote, weeks before trial, that a Sixth Amendment right is denied. And so in light of that, under Kerry v. Musseladen, this court cannot find the Ohio Court of Appeals decision unreasonable. And in addition, the trial judge addressed that issue. He said to the defendant, I think you're getting good representation here. You do not have the right to control what questions are asked. And some of the things the defendant was asking were for two people to stand up in front of young witness Trey and for Trey to point out the height, and things fraught with great concern that counsel was not allowing. So it was a particularly kind of difficult client, disruptive on more than one occasion. I have a question about that. Right. But you would have to concede, I assume, that comparing the size and height of those two persons was a key issue for this defendant. It was an issue for the defendant. However, it was the attorney's role to make that decision, make that call, and see how that was going to happen. And I guess under that analysis, if the attorney absolutely fails to do the job, then we have a claim of ineffective assistance afterwards, and that's the remedy. And that would be our position, Your Honor. The Supreme Court has, in fact, never spoken about circumstances during trial in which it might or might not be. We know timeliness is a basis. But as I understand it, there's no Supreme Court precedent addressing the issue of at what point during trial might it be timely or untimely to allow a defendant to exercise the right of self-representation. And I would assume that it would vary depending on the nature of the case, depending upon the defendant in question, and the trial court's knowledge of that defendant as observed throughout the proceeding. I mean, I assume it would depend on a lot of different things. And Ohio reviews these cases for an abuse of discretion, and federal law and even this court has said we can do that. The timing element is a loose standard, and the looser the standard, according to Ferretta, and the looser the standard, the more leeway we have and the state court has to make applications. That's Edpa law. So that would be our self-representation response. In the absence of U.S. Supreme Court precedent, the federal habeas court cannot find that the Ohio Court of Appeals decision rejecting the claim of self-representation on the merits is contrary to or an unreasonable application of Supreme Court precedent. That would be Corey V. Musladin. And the district court so found, and we would ask the court to affirm the district court. Petitioner also has raised issues concerning the felonious assault conviction, and the victim of the felonious assault was the decedent's nine-year-old son, Trey. And Petitioner is limited to arguing in federal habeas court what was argued in the state court, and presenting on the same legal and factual theory, and that's Wong v. Money. And the first thing Petitioner argued in the state court, he argued one claim of insufficient evidence supports this, and it was one assignment of error. And then he argued that the state failed to prove serious physical harm, and the sole basis was that Trey saw a psychologist for a year rather than a psychiatrist. And the Ohio Court of Appeals rejected the insufficient evidence claim regarding the felonious assault conviction. That psychiatrist versus psychologist dichotomy is not supported in Ohio law. We have cited Ridgeway in our brief, and it was sufficient in Ridgeway that the person saw a psychologist, and in fact saw them for four months. Whereas in this case, Trey saw a psychologist one hour a week for a full year, and Trey's mother said Trey suffered. He suffered. His grades went down. He was afraid to go out after this, and so he did experience serious physical harm. What do you do with the fact that the Ohio Court of Appeals was simply incorrect when it said that the child was in the garage when his father was shot? I don't believe it says exactly that the child is in the garage. I looked at that closely. What implication from their language can you draw except that the court presumed the child was in the garage? The court said that the child was following his father, and certainly the court said he's in proximity to the shootings. Casings are found outside the garage as well, and in fact the Court of Appeals found that the shooter was shooting from outside the garage. But what the Court of Appeals decision said was that Trey got out of the car after his father, that he was following his father, and his father went into the garage. And that's supported by the record. That part is supported by the record. And then when Trey heard shots, then he ducked around the side of the house. And the district court, based on that, found the record is replete with evidence of severe adverse consequences on a very young child. So that was one theory that petitioner argued. The second theory of insufficient evidence in state court under the same assignment of error was that the state failed to prove petitioner acted knowingly. The state failed to prove that the assailant knew Trey was present. As the district court pointed out, there was evidence at trial that petitioner had admitted he shot a man in front of his son, in front of the man's son. And that was testimony of Williams. So that gets to the knowingly element. He knew Trey was there. And that was the only thing that had been argued in the court of appeals, was that he thought Trey did not, there's no evidence he knew Trey was there. There was evidence of that. And in addition, the Ohio Court of Appeals rejected that argument because it found, again, Trey was in proximity to where spent rounds and casings were recovered. So, with regard to the insufficient evidence claim, as this court is aware, the standard is the habeas court gives deference to the trier of facts determination. If when viewed in light most favorable to the prosecution, there's enough evidence to enable any reasonable trier of fact to find that petitioner had acted knowingly and that there was serious physical harm. And secondly, the deference is accorded to the Ohio Court of Appeals decision. If the court has no more questions, I'm happy to submit at this point. All right. Thank you. Now, rebuttal. Your Honors, I just have one point to bring up on rebuttal. Judge Stranch, this is to Judge Stranch's question about a serious malfunction that may occur mid-trial. That is what we have here. We have a serious issue where we have a witness on the stand and a very serious height discrepancy between his testimony and what he believes the assailant was and the criminal defendant. Shunting defendants into their process merely because they're already there on the third day of trial unduly restricts their constitutional rights. That's your opinion, but the Supreme Court has never said that. Or anything close to it. No, Your Honor. I do not believe so quite that directly. But the Supreme Court has also not said that a denial may rest on the fact that the defendant is being adequately represented or that the lawyer is either good or bad. The right rests in the criminal defendant, not in his attorney to assert that right. And if there are no other questions. There may not, and congratulations on your first argument. Thank you, Your Honors. Thank you. Case is submitted. We'll call the next case.